UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DONALD ALBERT STACK,                                    18-CV-1184-MJR
                                                        DECISION AND ORDER
                  Plaintiff,

      -v-

COMMISSIONER OF SOCIAL SECURITY,

                  Defendant.

_____

      Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States

Magistrate Judge conduct all proceedings in this case.  (Dkt. No. 16)

      Plaintiff Donald Stack ("plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g)

and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social

Security ("Commissioner" or "defendant") denying his application for Disability Insurance

Benefits ("DIB") under the Social Security Act (the "Act").  Both parties have moved for

judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

For the following reasons, plaintiff's motion (Dkt. No. 6) is granted, defendant's motion

(Dkt. No. 14) is denied and the matter is remanded to the Commissioner for further

administrative proceedings consistent with this Decision and Order.

## BACKGROUND

      Plaintiff filed an application for DIB on May 12, 2016, alleging disability since

November 16, 2012, due to post-traumatic stress disorder ("PTSD"), anxiety, vocal cord

dysfunction, lumbar spine scoliosis, elbow neuropathy, and tinnitus.  (See Tr. 128, 132,

168)[1]  His application as initially denied, and plaintiff requested an administrative hearing.

_____

[1] References to "Tr." are to the administrative record in this case.  (Dkt. No. 5)

(Tr. 52-69, 72-75)   Administrative Law Judge ("ALJ") James Cole Cartledge held a telephonic hearing on June 22, 2018, during which plaintiff, his attorney, and a vocational expert testified.  (Tr. 27-51)  On July 10, 2018, the ALJ issued a decision that plaintiff was not disabled under the Act.  (Tr. 11-22)  Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on September 4, 2018.  (Tr. 1-5)  This action followed. (Dkt. No. 1)

## DISCUSSION

I.     *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential.  Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted).  "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts."  *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014).  "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner."  *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).  Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner."  *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (*quoting Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.    *Standards for Determining "Disability" Under the Act*

A "disability" is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §423(d)(2)(A). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical

3

opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (*quoting Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process."   20 C.F.R. §404.1520(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §404.1520(b).   If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.*  Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §404.1520(c).  To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.*  As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.*  Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions:  first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §404.1520(d).  If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.*

4

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §404.1520(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §404.1545(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §404.1520(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §404.1520(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.*

The burden through steps one through four described above rests on the claimant. If the claimant carries their burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III.   *The ALJ's Decision*

The ALJ followed the required five-step analysis for evaluating plaintiff's claim. Under step one, the ALJ found that plaintiff had not engaged in substantial gainful activity from the alleged onset date, November 16, 2012, through the date last insured, December 31, 2017. (Tr. 13)  At step two, the ALJ found that plaintiff had the severe impairments of degenerative joint disease of the lumbar spine; generalized anxiety disorder, and PTSD. (Tr. 13)  At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 14)  Before proceeding to step four, the ALJ found that plaintiff had the RFC to perform light work[2] with the following limitations: occasionally lift and/or carry 20 pounds, 10 pounds frequently, stand and/or walk 6 hours with normal breaks; and sit 6 hours with normal breaks.  He had no limitations with pushing and/or pulling, he could frequently balance, but he could only occasionally climb ramps, stairs, ladders, ropes, and scaffolds; and he could occasionally stoop, kneel, crouch, and crawl.  Plaintiff was limited to unskilled jobs involving simple routine, and repetitive tasks that required only occasional interaction with the public, coworkers, and supervisors, and occasional work-setting changes. (Tr. 16)

Proceeding to step four, the ALJ concluded that plaintiff was unable to perform his past relevant work as a scientist mathematician. (Tr. 21)  At step five, the ALJ found that plaintiff could perform representative occupations such as bench assembler, inspector

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  *See* 20 CFR §416.967(b).

and hand packager, and merchandise marker.  (Tr. 22)  Accordingly, the ALJ found that plaintiff was not disabled under the Act.  (*Id.*)

IV.   *Plaintiff's Challenges*

Plaintiff argues that that remand is required because the ALJ: (1) failed to reconcile the inconsistency between the RFC determination and a treating opinion; (2) failed to properly evaluate additional treating opinions and corresponding treating records; and (3) ignored two functional assessments and a Rating Decision from the Department of Veterans Affairs ("VA").  (Dkt. No. 6-1 at 16-27)

For the reasons that follow, the Court agrees that remand is required.

At the time of his hearing, plaintiff was 41 years old.  (Tr. 30)  He testified that he was medically retired from the United States Air Force in 2012 and was receiving 100% VA disability based on his anxiety.  (Tr. 31)  Plaintiff began mental health treatment at the VA Medical Center in September, 2015.  (Tr. 511)[3]

The record before the ALJ contained two functional assessments from examining VA physicians. On March 9, 2016, plaintiff underwent a compensation and pension ("C&P") examination with Dr. Hillary Tzetzo for unspecified anxiety disorder.  (Tr. 223-224)

In connection with the examination, Dr. Tzetzo noted that he reviewed plaintiff's claims file and military records. (Tr. 225) Plaintiff's symptoms included depressed mood; anxiety; panic attacks that occur weekly or less often; flattened affect; disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationships; difficulty in adapting to stressful circumstances, including work or a worklike

---

[3]  Although plaintiff also claimed disability due to physical impairments, they are not at issue in deciding the instant motions.  (*See* Dkt. No. 6-1 at 1)

setting; inability to establish and maintain effective relationships; suicidal ideation; and obsessional rituals which interfere with routine activities. (Tr. 226-227)  Dr. Tzetzo opined that plaintiff's mental disorder caused occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking, and/or mood.  (Tr. 225)

On December 15, 2017, plaintiff underwent another C&P examination for unspecified anxiety disorder with Dr. William Reynolds.  (Tr. 423)  Plaintiff reported that he had discontinued his doctoral studies due to significant anxiety problems that caused time and attendance problems, and this was the third time he had to withdraw from a form of occupation due to his symptoms.  (Tr. 425)  Based upon plaintiff's treatment records, plaintiff's self-report, relevant literature, and his own training and experience, Dr. Reynolds opined that plaintiff would be unable to secure and maintain substantially gainful employment in his normal occupational environment, regardless of the physical or sedentary aspects of a given job, primarily due to persistent symptoms of increased arousal (irritability and difficulty concentrating), avoidance of stimuli associated with his traumatic experiences (avoiding conversations, interpersonal interactions, crowds), and numbing of general responsiveness (being detached and having a restricted range of affect).    These  functional  limitations  would  impact  plaintiff's  ability  to  engage  in professional and effective interpersonal interactions and he could be experienced by superiors, coworkers, or customers as hostile at worst or aloof or disinterested at best. The limitations would also undermine the quality of his productivity. Dr. Reynolds further opined that these functional limitations could also result in avoidant behavior that could ultimately significantly affect attendance to scheduled work shifts.  (Tr. 427)  Dr. Reynolds

noted progression in plaintiff's symptoms and concluded that he had total occupational and social impairment due to his mental disorder.  (Tr. 423, 424)

On January 10, 2018, the VA Veterans Benefits Administration issued a Rating Decision which increased plaintiff's service connected disability for unspecified anxiety disorder from 70% to 100% effective October 26, 2017.  (Tr. 187)  The Rating Decision was based on plaintiff's VA treatment records and the December 15, 2017 examination. (Tr. 188)

Defendant is correct that disability determinations made by other governmental agencies are not based upon social security law and are not binding on the Commissioner, see *Atwater v. Astrue*, 512 Fed. Appx.  67, 70 (2d Cir. 2013 Feb. 21, 2013), and that the VA requires less proof of disability than the Social Security Administration.  *See Fitzgerald v. Astrue*, No. 08 CV 170, 2009 WL 4571762, at *7 (D. Vt. Nov. 30, 2009)  (Dkt. No. 14-1 at 25)  The Court nonetheless finds that the ALJ committed legal error in failing to address the functional assessments from the C&P examinations and the Rating Decision.

Although "a determination made by another agency regarding a claimant's disability is not binding on the Social Security Administration . . . it is entitled to some weight and should be considered." *Atwater*, 512 Fed. Appx. at 70 (citation and internal quotation omitted).   Moreover, Social Security regulations required the ALJ to evaluate every medical opinion, regardless of its source. *See* 20 C.F.R. § 404.1527(c).

Here there is no indication that the ALJ considered the functional assessments or the Rating Decision, all of which appear to be based on plaintiff's longitudinal  treatment record at the VA. *See Stokes v. Astrue*, No. 10–CV–1129, 2012 WL 695856, at *15

(N.D.N.Y. Mar. 1, 2012) ("[s]ince all of plaintiff's treatment was at the V.A. Medical Center, the ALJ was obligated to, at the very least, consider the [VA's] determination as it was based upon the same medical record"); *Loree v. Colvin*, No. 15-CV-251, 2016 WL 5107028, at *5 (D. Vt. Sept. 20, 2016) (remanding for consideration of VA determination where it was "based on much of the same medical evidence, principally from veterans-affiliated medical providers . . . ")  Additionally, the Rating Decision relates to the same impairment alleged in plaintiff's DIB claim.  *See Loree*, 2016 WL 5107028, at *5 ("The ALJ's error was not harmless because the VA determination relates to the same impairments at issue in Loree's DIB claim (PTSD being the most significantly debilitating) and their effect on Loree around the same time as the alleged disability period."); *Best v. Comm'r of Soc. Sec.*, No. 18-CV-5751, 2020 WL 1550251, at *4 (E.D.N.Y. Mar. 31, 2020) (same).

Finally, and contrary to defendant's assertion, the VA did not "den[y] Plaintiff's claim of 100% disability until January 2018, which is after his date last insured for social security disability purpose[s]."  (Dkt. No. 14-1 at 23)  The Rating Decision, while issued in January, 2018, was effective October 26, 2017, and was based on treatment records from 2012 through 2017—within the relevant time period and prior to the date last insured, December 31, 2017. *See Best*, 2020 WL 1550251, at *4 ("The VA's determination falls squarely within that period: the VA determined on December 18, 2017 that Plaintiff's mental health conditions had worsened to the point where she was 100% disabled effective as of August 1, 2017. . . . The ALJ was therefore obligated to consider that another agency had found Plaintiff disabled during the relevant benefits period."); *see also, e.g., Dereu v. Saul*, No. 19-CV-0164, 2020 WL 5250507, at *3 (W.D.N.Y. Sept. 3,

2020) ("with respect to the timing of [the physician's] opinion, the ALJ's reference to the fact that it was rendered after the date last insured was misplaced, given that it was based on [his] treatment of plaintiff beginning in 2012 and continuing through at least August 2015: as such, it was relevant to the plaintiff's limitations during the relevant period, regardless of when it was written.").

An error in weighing or failing to weigh a VA determination does not constitute reversible error in all circumstances. *See Edward V. v. Saul*, No. 17-CV-00209, 2019 WL 3072214, at *15 (D. Vt. July 15, 2019) ("Because the ALJ considered the VA's disability rating in making a disability determination and explained why he felt it was not persuasive, there is no reversible error in his decision to accord it little weight."); *Blessing v. Colvin*, No. 14-CV-1489, 2015 WL 7313401, at *10 (N.D.N.Y. Nov. 19, 2015) (any error in independently assigning the VA's determination a specific weight was harmless where it was based solely upon a medical opinion that was rejected by the ALJ); *Fitzgerald v. Astrue*, No. 08–CV–170, 2009 WL 4571762, at *10 (D. Vt. Nov. 30, 2009) (not remanding where ALJ failed to consider VA determination because it "is so far removed in time from the dates critical to Fitzgerald's claim for social security disability benefits, that such determination is irrelevant to the social security decision").

In this case, however, the above evidence was not discussed by the ALJ at all and was pertinent to his DIB claim for the reasons explained above. *See Machia v. Astrue*, 670 F.Supp.2d 326, 336 (D.Vt. 2009) (VA determination may not be "completely ignore[d]").[4] On remand, the ALJ should consider the Rating Decision and the functional assessments of Drs. Tzetzo and Reynolds.

---

[4] The Court makes no decision as to whether this evidence supports a finding of disability. (*See* Dkt. No. 6-1 at 27)

Because the Court has determined that remand is warranted on this basis, it need not reach plaintiff's remaining arguments.

## CONCLUSION

For the foregoing reasons, plaintiff Donald Stack's motion for judgment on the pleadings (Dkt. No. 6) is granted, defendant Commissioner of Social Security's motion for judgment on the pleadings (Dkt. No. 14) is denied, and the matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:          September _11_, 2020
                Buffalo, New York

MICHAEL J. ROEMER
United States Magistrate Judge

12